JOSEPH S. MARION v. ROBERT R. LONG, IMPORT PERFORMANCE CENTRE, LTD. AND WILLIAM FERRETTI D/B/A THOMPSON INDUSTRIES

No. 8422SC540

(Filed 5 February 1985)

Process § 14.3— Georgia auto repair shop—insufficient contacts with N.C.—no in personam jurisdiction

In personam jurisdiction could not constitutionally be exercised over defendant auto parts and auto repair shops whose only places of business were in Georgia, though defendants did advertise in magazines reasonably expected to reach N.C., since only incidental services, including trailering plaintiff's car from N.C. to Georgia, were performed in N.C., as opposed to all the actual contract work of repairing the car, which took place in Georgia; the parties' contract was not in writing; defendants never came to N.C. except to perform incidental and apparently gratuitous services; and these contacts were insufficient to establish minimum contacts required for exercise of in personam jurisdiction.

APPEAL by defendants from Collier, Judge. Order entered 19 January 1984 in DAVIE County Superior Court. Heard in the Court of Appeals 15 January 1985.

Plaintiff Joseph Marion sought to have the engine of his 1954 Bentley automobile repaired. He contacted defendant William Ferretti, doing business in auto parts as Thompson Industries in Douglasville, Georgia, using an advertisement placed by Ferretti in a national car collectors' magazine. Plaintiff asked Ferretti if he could repair the car. When Ferretti answered in the negative, plaintiff asked Ferretti if he knew anyone in the area who could.

Ferretti referred plaintiff to defendant Robert Long, president of Import Performance Centre, a repair shop which had its sole place of business in Chamblee, Georgia. Plaintiff had one of his employees, who lived in Georgia, visit Long's shop. Thereafter Ferretti and Long came to North Carolina and trailered the Bentley back to Georgia. At some point a contract was entered into between defendants and plaintiff to repair the car. After increasing conflict concerning the garaging of the car and the repair work, plaintiff regained possession of his car in late 1982.

Plaintiff commenced this action in June 1983. He sought damages for breach of contract and wrongful retention of certain irreplaceable automobile parts, asserting punitive damages and unfair trade practices claims. Total actual damages alleged were $5,770. Defendants sought dismissal for lack of jurisdiction over the person, but the court denied their motions. Defendants appealed.

*Henry P. Van Hoy, II, for plaintiff.*

*Brock & McClamrock, by Grady L. McClamrock, Jr., for defendants.*

WELLS, Judge.

To determine if foreign defendants may be subjected to *in personam* jurisdiction in this state, we apply a two-pronged test. First, we determine whether North Carolina jurisdictional statutes allow our courts to entertain the action. Second, we determine whether our courts can constitutionally exercise such jurisdiction consistent with due process of law. *See Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977); *Sola Basic Industries v. Parke County*, 70 N.C. App. 737, 321 S.E. 2d 28 (1984).

Statutory jurisdiction arises under N.C. Gen. Stat. § 1-75.4 (1983), the North Carolina "long-arm" statute, which is a legislative attempt to assert *in personam* jurisdiction to the full extent permitted by the United States Constitution. *Dillon v. Funding Corp., supra.* The statute should receive liberal construction, in favor of finding jurisdiction. *Leasing Corp. v. Equity Associates*, 36 N.C. App. 713, 245 S.E. 2d 229 (1978). The burden is on plaintiff to establish *prima facie* that one of the statutory grounds applies. *See Public Relations, Inc. v. Enterprises, Inc.*, 36 N.C. App. 673,

245 S.E. 2d 782 (1978); *Bryson v. Northlake Hilton*, 407 F. Supp. 73 (M.D.N.C. 1976). Jurisdiction here lies under G.S. § 1-75.4(4):

> Local Injury; Foreign Act.—In any action . . . claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
>
> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; . . . .

The Bentley, in North Carolina and property of the North Carolina plaintiff, allegedly was damaged by the wrongful acts of the Georgia defendants in removing and retaining certain parts. Defendants admitted coming to North Carolina and discussing the repairs and then loading and transporting the car. Construing the statute liberally, we conclude that the statutory time and place requirements were met and that defendants carried on "service activities" in North Carolina. Accordingly, we hold that there were statutory grounds for exercise of jurisdiction.

We do not agree with the trial court that such jurisdiction could constitutionally be exercised in this case. The constitutional question requires application of the familiar "minimum contacts" test. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The existence of minimum contacts cannot be ascertained by mechanical rules, but rather by consideration of the facts of each case in light of traditional notions of fair play and justice. *Id.; Dillon v. Funding Corp., supra.* The factors to be considered are (1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties. *Sola Basic Industries, Inc. v. Parke County Rural Electric Membership Corp., supra; see also United Advertising Agency, Inc. v. Robb*, 391 F. Supp. 626 (M.D.N.C. 1975); Annot. 62 L.Ed. 2d 853 (1981).

The existence of minimum contacts in this case can depend on only two contacts: (1) the advertisement placed in a national car collectors' magazine by Ferretti, and (2) defendants' trip to North Carolina and the alleged closing of the contract here. This court had held that jurisdiction cannot constitutionally rest solely on placement of advertisements in national magazines. *Hankins v.*

*Somers,* 39 N.C. App. 617, 251 S.E. 2d 640, *disc. rev. denied,* 297 N.C. 300, 254 S.E. 2d 920 (1979). Due process requires more.[1] In *Hankins,* it was satisfied by defendants' independent marketing program conducted in North Carolina over a period of three years. *See also Lane v. WSM, Inc.,* 575 F. Supp. 1246 (W.D.N.C. 1983) (national magazine advertising *and* direct mail campaigns in North Carolina alone insufficient; but with continuous broadcasts from Tennessee soliciting customers minimum contacts existed); *Southern Case, Inc. v. Mgmt. Recruiters Intern.,* 544 F. Supp. 403 (E.D.N.C. 1982) (advertising, together with ongoing franchise contracts, visits by representatives, training, and royalty collection sufficient); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) (advertising only one of several factors). The advertisement alone thus did not constitute sufficient minimum contacts to support jurisdiction. Plaintiff has not shown any broader solicitation campaign which might support a different ruling.

The trip to North Carolina by defendants came after plaintiff had contacted them in Georgia. While the time and place of formation of the contract is disputed, the uncontradicted record before us shows (1) that it was an oral contract, (2) that it did not specify what law, if any, applied, and (3) that the services contracted for, repair of the Bentley, were to be performed exclusively in Georgia.[2] Defendants' affidavits show that their places of business lie exclusively in Georgia. Applying the factors we outlined above, both the quantity and quality of these contacts are minimal indeed. Had defendants not agreed to trailer the Bentley to Georgia, a service entirely incidental to the purpose of the contract, nothing in the record suggests that they would have ever come to North Carolina for any business purpose. On the other hand, the cause of action did arise out of this one contact. The interests of the two states as a forum appear equally bal-

---

1. The court in *Southern Case, Inc. v. Mgmt. Recruiters Intern.,* 544 F. Supp. 403 (E.D.N.C. 1982), suggested that such advertising would suffice by itself under North Carolina law. It relied on, and apparently misread, *Federal Insurance Co. v. Piper Aircraft Corp.,* 341 F. Supp. 855 (W.D.N.C. 1972), *aff'd,* 473 F. 2d 909 (4th Cir. 1973) (mem.); there advertising was only one of eleven factors in a comprehensive solicitation, sales, and service program.

2. Although trailering the car from North Carolina may have been a service, it was merely incidental, and without the repair contract would not have been undertaken at all.

anced. The convenience factor suggests Georgia may be the preferable forum, since (1) the witnesses on the contract performance issue (the actual work done on the Bentley) will more probably be located there, (2) defendants contend, and plaintiff does not deny, that plaintiff has employees in Georgia who visited defendants before the contract was entered into, and (3) the record reflects that both sides have Georgia as well as North Carolina counsel. Based on our evaluation of these factors, in particular the isolated nature of defendants' trip to North Carolina, we conclude that it would be inconsistent with due process of law for North Carolina courts to exercise personal jurisdiction over these defendants in this case based on this contract and the associated visit.

While we are aware that jurisdiction may constitutionally be based on a single contract, *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957); *Dillon v. Funding Corp., supra*, the single-contract cases finding sufficient contact have, unlike this one, involved other factors beyond simple formation of a contract. These include great disparity in litigation resources, *McGee v. International Life Ins. Co., supra*; lack of a better forum for plaintiff under circumstances where it would be inequitable to force suit in defendants' home state, *Dillon v. Funding Corp., supra*; express contract provisions that the law of the forum state would apply, *Harrelson Rubber Co. v. Dixie Tire and Fuels*, 62 N.C. App. 450, 302 S.E. 2d 919 (1983); a longstanding business relationship, *Leasing Corp. v. Equity Associates, supra*; or substantial other business in North Carolina, *Fiber Industries v. Coronet Industries*, 59 N.C. App. 677, 298 S.E. 2d 76 (1982). None of these factors appears here. Rather, this case more closely resembles *Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 265 S.E. 2d 476 (1980), in which all acts related to the contract, with one exception, occurred outside North Carolina; this court held there that jurisdiction should be declined.

We also conclude that the combination of the advertisement and the contract/visit does not support jurisdiction. The activity in addition to advertising does not rise to the level found in any of the "advertising" cases discussed above; nor does the addition of the advertisement to the contract move this case into the group of "contract" cases discussed above. The contacts shown are simply too isolated to warrant exercise of *in personam*

jurisdiction. The type of showing necessary to support such exercise was demonstrated in a recent Fifth Circuit case in which Louisiana residents successfully invoked Louisiana jurisdiction over a Texas amusement park, site of an alleged personal injury. *Pedelahore v. Astropark, Inc.*, 745 F. 2d 346 (5th Cir. 1984). Not only did plaintiffs show the particular extent of the advertising campaign, but they also demonstrated the results of the campaign in terms of the Louisiana patronage of defendant's park. No such showing was made here; plaintiff simply alleged advertisement in a national magazine, without showing the extent of its circulation in North Carolina, or its effect on defendants' sales.

Our holding in *Sola Basic* reinforces our conclusion here. There defendant, a rural electric company, operating exclusively in Indiana, purchased a transformer in Indiana from plaintiff Wisconsin corporation, which had a plant in Goldsboro, North Carolina. The transformer failed and was brought (apparently under warranty) by plaintiff to Goldsboro. The warranty had expired, however, and the parties entered into a written repair contract. Defendant sent a representative to Goldsboro to witness the repair work. Plaintiff sued in North Carolina when defendant refused to pay the repair bill of some $70,000 after the transformer was returned to Indiana. No other contacts existed between defendant and North Carolina. We held that this one "isolated business excursion" did not provide adequate constitutional basis for the exercise of *in personam* jurisdiction. Although these defendants, unlike defendant in *Sola Basic*, did advertise in magazines reasonably expected to reach North Carolina, their other contacts were much less significant: only incidental services were performed in North Carolina in this case, as opposed to all the actual contract work; the present contract was not in writing; and defendants never came to North Carolina except to perform incidental and apparently gratuitous services. Our ruling here, that jurisdiction in this case must be declined, follows the standard of constitutional fairness we set in *Sola Basic*.

Decisions of other states support our holding. *See Fleet Leasing, Inc. v. District Court, Etc.*, 649 P. 2d 1074 (Colo. 1982) (Oregon repair shop with no other contacts sued for negligent repair; no jurisdiction); *Bev-Mark, Inc. v. Summerfield GMC Truck Co., Inc.*, 268 Pa. Super. 74, 407 A. 2d 443 (1979) (Indiana repair shop with substantial advertising near interstate highway sued

for negligent repair; no jurisdiction); *Lumber Mart, Inc. v. Haas Intern. Sales & Serv.*, 269 N.W. 2d 83 (N. Dak. 1978) (negligent repair action; related sales negotiations and unrelated hauling operations did not support jurisdiction). We also note that in *Fleet Leasing* and *Bev-Mark*, the actions were personal injury actions, in which the plaintiffs' home state typically has a stronger interest than contract actions.

Accordingly, we hold that the trial court erred in denying defendants' motions to dismiss. Under the circumstances of the case as shown by this record, *in personam* jurisdiction could not constitutionally be exercised over these defendants. The order appealed from must be reversed, and the cause remanded for entry of an order dismissing the complaint.

Reversed and remanded.

Judges ARNOLD and MARTIN concur.