WILLIAM R. ANDREWS ASSOCIATES v. SODIBAR SYSTEMS OF D. C., INC.

No. 7515DC914

(Filed 17 March 1976)

1. **Rules of Civil Procedure § 4; Process § 9— nonresident defendant — goods shipped from N. C. — long arm statute applicable**

    The trial court's finding that this action related to goods shipped from N. C. by the plaintiff to the defendant's principal place of business in Washington, D. C., at defendant's order and direction was supported by the uncontroverted allegations in plaintiff's complaint, and the N. C. long arm statute, G.S. 1-75.4(5)d, was therefore applicable to this case.

2. **Constitutional Law § 24; Rules of Civil Procedure § 4 — nonresident defendant — minimum contacts — in personam jurisdiction — due process**

    Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimal contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

3. **Process § 9; Rules of Civil Procedure § 4— nonresident defendant — minimum contacts insufficient for in personam jurisdiction — due process**

    The exercise of *in personam* jurisdiction over defendant by the courts of N. C. would be unconstitutional in that it would violate defendant's due process rights since the only contact defendant ever had with the State of N. C. was that on two occasions defendant entered into contracts in Washington, D. C., with a resident of N. C. for delivery and receipt of goods in Washington, D. C., and those goods were shipped by plaintiff from his warehouse in Durham, N. C.

APPEAL by defendant from *Allen, Judge.* Order entered 19 August 1975 in District Court, ORANGE County. Heard in the Court of Appeals 9 March 1976.

This is a civil action in which plaintiff seeks to recover $4,612.50 which plaintiff alleges defendant owes by reason of the sale and delivery by plaintiff to defendant of 150 new aluminum $CO_2$ cylinders at a unit price of $30.75. The sole question is whether the court acquired jurisdiction over the defendant.

Plaintiff is a business association owned by William R. and Bernetta A. Andrews, who reside in Orange County, North Carolina. Plaintiff has its principal place of business in Orange County and is engaged in the sale of aluminum $CO_2$ cylinders.

Defendant is a corporation organized and existing under the laws of the State of Delaware. It has its office and principal place of business in Washington, D. C., and is engaged in business as a wholesale seller of soda fountain supplies in Washington, D. C., and the surrounding metropolitan area. Defendant is not domesticated in North Carolina and has no place of business, agent, or representative in North Carolina.

In a previous action between these same parties, this Court found that the complaint filed by plaintiff in that case, although making mention of the 150 new aluminum cylinders sold by plaintiff to defendant, asserted a claim based entirely on plaintiff's additional allegations made in that case concerning alleged defects in certain steel cylinders sold by defendant to plaintiff in Washington, D. C., and shipped from there to Florida. Accordingly, this Court held in that case that plaintiff's claim as then asserted did not relate to goods "shipped from this State by the plaintiff to the defendant on his order or direction" so as to bring the case within the provisions of G.S. 1-75.4(5)d. See: *Andrews Associates v. Sodibar Systems*, 25 N.C. App. 372, 213 S.E. 2d 411 (1975). The opinion of this Court in that case was filed on 16 April 1975.

On 24 April 1975 plaintiff instituted the present action against defendant in the District Court in Orange County, North Carolina. The essential allegations of the complaint filed in the present case are contained in paragraphs IV, V, VI, and VII of the complaint, which are as follows:

"IV. On or about November 1, 1973, William R. Andrews visited Mr. Alvin Simon, President of Defendant corporation, at the place of business of defendant at 1222 First Street, N.E., Washington, D. C., and offered to sell to defendant aluminum $CO_2$ cylinders at a unit price of $30.75; defendant accepted said offer and placed his order for 150 of said cylinders.

V. Plaintiff and defendant thereby entered into a contract on or about November 1, 1973, under the terms of which defendant agreed to order and purchase 150 new aluminum cylinders from plaintiff at a unit price of $30.75, and plaintiff agreed to sell same to defendant.

VI. Thereafter, on or about November 12, 1973, and on the order and direction of defendant, plaintiff shipped from his warehouse near Durham, North Carolina,

and delivered to the defendant at his place of business aforesaid 150 new aluminum $CO_2$ cylinders as agreed in the contract; defendant accepted delivery of said cylinders and has used said cylinders in his business.

VII. By reason of plaintiff's performance of the said contract, defendant owes to plaintiff the sum of $4,612.50; and defendant has failed and refused to pay said sum, despite repeated demands by plaintiff for payment."

On 13 May 1975 plaintiff's attorney filed an affidavit showing the mailing of a copy of the summons and complaint by registered mail addressed to defendant at its Washington, D. C. address pursuant to Rule 4(j)(9)b of the North Carolina Rules of Civil Procedure. On 21 May 1975 defendant filed a motion pursuant to Rule 12(b) to quash the service of process upon it and to dismiss the action for lack of jurisdiction over the defendant, supporting this motion by an affidavit of defendant's president. The essential allegations in this affidavit may be summarized as follows:

Affiant has been president of the defendant corporation, Sodibar Systems of D. C., Inc., ever since it was incorporated on 1 July 1948. Defendant is incorporated under the laws of Delaware and has its office and place of business in Washington, D. C. It does not have and never has had any office or place of business other than its place of business in Washington, D. C. It employs approximately ten (10) employees in Washington, D. C. Defendant has never transacted any business in North Carolina, and no products produced or manufactured by defendant have ended up in the hands of any person, firm, or corporation in North Carolina. Defendant has never maintained any salesmen or solicitors for the solicitation of business in North Carolina, has never advertised in national publications or on radio or television, and has never engaged in any form of advertising or soliciting in North Carolina. Defendant has never had any office or place of business, or any agent or employee, in North Carolina for any purpose. Except for the transactions which are the subject of this suit, neither the defendant corporation nor any officer, director, agent or employee of the corporation has ever had any contact of any kind with the State of North Carolina or with any person, firm or corporation of the State of North Carolina, for any purpose connected with any business or corporate purpose of the company. The first contact of any kind which defendant had with any representative of

plaintiff was on or about 26 July 1973 when Mr. Andrews came to the offices of defendant corporation in Washington, D. C., and solicited an order for aluminum $CO_2$ cylinders. These were shipped by Mr. Andrews to the defendant on or about 2 August 1973. On or before 2 November 1973, "Mr. Andrews arranged with the defendant company to ship to the defendant an additional 150 aluminum cylinders" and to pick up from defendant 150 50-pound used cylinders to ship to St. Petersburg, Florida. Plaintiff arranged for Ryder Truck Lines, Inc., to ship the defendant the aluminum cylinders and to pick up the 50-pound used cylinders for shipment to St. Petersburg, Florida, and William R. Andrews was billed directly by Ryder Truck Lines. The defendant never initiated any contract with the plaintiff, never called the plaintiff in North Carolina, and never otherwise communicated with the plaintiff, except as stated above.

On 19 August 1975 the District Court entered an order making findings of fact, including findings that "this action relates to goods and merchandise of value shipped from North Carolina by the plaintiff to the defendant at the defendant's order and direction," that "to force plaintiff to prosecute this claim in the courts of the domicile of the defendant would work substantial hardship on the plaintiff, possibly forcing him to abandon his claim," and that "defendant has on at least one occasion prior to the transaction herein caused merchandise to be shipped from plaintiff in North Carolina to its offices in Washington, D. C." On these findings the Court concluded that the District Court of Orange County has jurisdiction under G.S. 1-75.4(5)d and that application of that statute to confer jurisdiction does not offend due process under the United States Constitution.

In accordance with these findings and conclusions, the Court denied defendant's motion to dismiss, and defendant appealed.

*Epting & Hackney by Joe Hackney for plaintiff appellee.*

*James B. Maxwell for defendant appellant.*

PARKER, Judge.

The sole question presented is whether the court acquired in personam jurisdiction over defendant corporation under our "long arm" statute, G.S. 1-75.1 *et seq.* Plaintiff contends that the North Carolina court acquired such jurisdiction by virtue of

G.S. 1-75.4(5)d which provides that a court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure in any action which:

> "d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction."

Defendant, in contesting the in personam jurisdiction of the North Carolina courts, makes two contentions. First, defendant contends that there is no indication in the record that the defendant corporation ever ordered or directed plaintiff to ship any goods anywhere, and therefore G.S. 1-75.4(5)d does not apply. Second, defendant contends that the imposition of in personam jurisdiction over this defendant by the North Carolina courts under the facts of this case is unconstitutional in that it would violate defendant's due process rights under the Federal Constitution.

[1]   As to defendant's first contention, plaintiff alleged in paragraph VI of the complaint that on or about 12 November 1973 "on the order and direction of defendant, plaintiff shipped from his warehouse near Durham, North Carolina, and delivered to the defendant at his place of business" the 150 new aluminum $CO_2$ cylinders "as agreed in the contract." No responsive pleading has been filed, and nothing in the present record controverts the above quoted allegations of the complaint. The averment in the affidavit made by defendant's president that "Mr. Andrews arranged with the defendant company to ship to the defendant company an additional 150 aluminum cylinders" is not inconsistent with the fact that the shipment may have been made on defendant's order or direction, and nothing elsewhere in the affidavit controverts the quoted portion of paragraph VI of the complaint. The trial court has found that this action relates to goods shipped from North Carolina by the plaintiff to the defendant at defendant's order and direction. That finding is supported by the uncontroverted allegations in plaintiff's complaint. Accordingly, on the present record we find G.S. 1-75.4(5)d applicable to this case, and we are thus brought to defendant's second contention, that to apply the statute to impose in personam jurisdiction upon defendant under the facts of this case would violate defendant's rights to due process under the Constitution of the United States.

[2] In the context of defendant's constitutional contentions, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimal contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L.Ed. 95, 102, 66 S.Ct. 154, 158 (1945). The existence of minimum contacts must be determined upon the particular facts of each case. *Chadbourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974).

[3] What contacts did defendant in the present case have with the State of North Carolina? It maintained no office here, sent no salesman, agent, or employee here, solicited no business here, advertised in no media coming into this State, and had no contact of any nature with any person, firm, or corporation of the State of North Carolina excepting only its transactions with the plaintiff herein. With regard to those transactions, the facts shown by this record, as disclosed by the allegations in plaintiff's complaint and in the affidavit of defendant's president, are that on two occasions, once in late July and once in early November 1973, Mr. William R. Andrews, representing plaintiff, visited at defendant's office in Washington, D. C., where he solicited orders for aluminum $CO_2$ cylinders. As a result of the first visit he obtained an order from defendant for 250 cylinders at a price of $27.55 each delivered to defendant's warehouse, and those cylinders were shipped by Andrews to defendant on or about 2 August 1973. Apparently no controversy exists between the parties with respect to those 250 cylinders. At the time of Andrews's second visit to defendant's office in Washington, D. C., on or about 1 November 1973, he offered to sell to defendant aluminum $CO_2$ cylinders at a unit price of $30.75. Defendant accepted this offer and placed his order for 150 of said cylinders. As agreed in the contract resulting from this offer and acceptance, plaintiff shipped from his warehouse near Durham, North Carolina, and delivered to the defendant at its place of business in Washington, D. C., the 150 new aluminum cylinders which are the subject of this suit. This shipment was arranged for by plaintiff with Ryder Truck Lines, Inc., and plaintiff also arranged with Ryder Truck Lines, Inc. to pick up from defendant in Washington, D. C., certain used cylinders for shipment to Florida.

Upon analysis of the foregoing facts, it is apparent that the only contact defendant has ever had with the State of

North Carolina is that on two occasions defendant entered into contracts in Washington, D. C. with a resident of North Carolina for delivery and receipt of certain goods in Washington, D. C. These contracts were negotiated, agreed to, and performed outside of North Carolina, and the only activity in North Carolina which resulted from them was that on two occasions plaintiff, not the defendant, made shipments of goods from plaintiff's warehouse in North Carolina.

We have found no case holding "contacts" so meager as here disclosed sufficient to sustain in personam jurisdiction in the forum State. See: Annot., 20 A.L.R. 3rd 1201 (1968). Among the cases relied upon by plaintiff, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957) states that it is sufficient for the purposes of due process that the suit be based on a contract "which had substantial connection with" the forum State, and the Supreme Court, in finding such a substantial connection in that case, pointed out that the contract of life insurance there sued upon was delivered in the forum State, the premiums were mailed from there, and the insured was a resident of that State when he died. No such continuing contractual relationship connecting defendant with the forum State is shown in the present case. *Byham v. House Corp.,* 265 N.C. 50, 143 S.E. 2d 225 (1965) involved a franchise agreement for operating a restaurant business under a chain trade name in a specified territory in this State. The nonresident defendant reserved the right to select the location, set up the business, establish procedures during the opening week, control policy, maintain general supervision throughout the life of the franchise, inspect the books, premises and operations, control all of the forms and details of the business, furnish supplies and equipment, and control advertising. The Court held there were sufficient contacts with this State by the nonresident defendant to support in personam jurisdiction over defendant in North Carolina. No such extensive contacts have been shown in the present case. *Chadbourn v. Katz, supra,* was concerned with an action for breach of a contract for sale of real property located in North Carolina. Plaintiff's action in the present case does not involve real property in this State.

For the courts of this State to exercise in personam jurisdiction over defendant in the present case under the facts disclosed by the record now before us would, in our opinion, violate

defendant's constitutional rights to due process. Accordingly, the judgment appealed from is

Reversed.

Judges BRITT and CLARK concur.