CHURCH v. CARTER

[94 N.C. App. 286 (1989)]

---

WAYNE G. CHURCH, BRUCE M. CHURCH AND VERNON FOSTER v. JAMES R. CARTER

No. 8823SC930

(Filed 20 June 1989)

**1. Process § 14.1— partnership formed in North Carolina—subject matter jurisdiction in North Carolina**

The trial court had subject matter jurisdiction to adjudicate plaintiffs' claims against defendant for fraud, an accounting,

and dissolution of the parties' partnership where the trial court properly found that the parties had formed a North Carolina partnership.

2. **Process § 14.1— North Carolina partnership—real estate development in South Carolina—money sent from North Carolina—"things of value"**

   Plaintiffs shipped "things of value" to defendant at his direction, and statutory jurisdiction was thus established under N.C.G.S. § 1-75.4(5)(d) where plaintiffs advanced $67,500 to defendant to be used by him to acquire options on certain real property in South Carolina and to obtain a mobile home for use in the partnership business, and these monies were sent to defendant from Wilkes County.

3. **Process § 14.3— North Carolina partnership—minimum contacts—sufficiency for exercise of personal jurisdiction**

   Although defendant's contacts with North Carolina may have been few in number, the nature and quality of them—his soliciting of partners here, the formation of the partnership here, defendant's receipt of monies sent to him from North Wilkesboro, and the partnership's taking out a loan for which defendant signed a guaranty agreement with a North Carolina bank—were such that due process was not offended by this State's exercising jurisdiction over him.

APPEAL by defendant from *Russell G. Walker, Jr., Judge.* Order entered 1 June 1988 in Superior Court, WILKES County. Heard in the Court of Appeals 21 March 1989.

*Vannoy, Moore, Colvard, Triplett, Freeman & McLean, by Anthony R. Triplett, for plaintiff-appellees.*

*McElwee, McElwee, Cannon & Warden, by William C. Warden, Jr., for defendant-appellant.*

BECTON, Judge.

This is an appeal from an order denying defendant's motion to dismiss a Complaint for lack of subject matter and personal jurisdiction. We affirm.

Plaintiffs, Wayne G. Church, Bruce M. Church, and Vernon Foster, are residents and citizens of North Carolina. Defendant,

James R. Carter, is a resident and citizen of South Carolina. In 1986, plaintiffs and defendant entered into an oral agreement to form the Kings Port Partnership. The purpose of this venture was to purchase, construct, and sell various condominium units and patio-home lots in North Myrtle Beach, South Carolina. Plaintiffs allege that, in their roles as financial investors in the partnership, they forwarded sums of money to defendant for his use in acquiring options on five tracts of land in South Carolina. Plaintiffs sent these monies to South Carolina from Wilkes County, North Carolina. In August 1986, the partnership executed a guaranty agreement, in favor of Southern National Bank of North Carolina, to secure a $60,000 loan. Defendant signed the guaranty on behalf of the partnership.

In 1987, plaintiffs filed a Complaint in the Superior Court of Wilkes County, charging defendant with fraud and praying for damages, an accounting, and dissolution of the partnership. Defendant moved to dismiss the Complaint, pursuant to Rule 12(b)(1) and Rule 12(b)(2) of the Rules of Civil Procedure, for lack of subject matter and personal jurisdiction. Following a hearing, the trial judge denied the motion, and defendant appealed.

I

[1] Ordinarily, an order denying a motion to dismiss for lack of subject matter jurisdiction is interlocutory and is not immediately appealable. *Shaver v. N.C. Monroe Constr. Co.*, 54 N.C. App. 486, 487, 283 S.E. 2d 526, 527 (1981), *cited with approval, Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327, 293 S.E. 2d 182, 184 (1982). However, since defendant also has challenged the trial court's power to exercise personal jurisdiction over him, we must, at this time, decide the issue he has raised concerning subject matter jurisdiction. *See* N.C. Gen. Stat. Sec. 1-75.4 (1983) (subject matter jurisdiction prerequisite to court's exercising personal jurisdiction); W. Shuford, *North Carolina Civil Practice and Procedure* Sec. 12-6, n.1 (1988).

N.C. Gen. Stat. Sec. 7A-240 (1983) confers subject matter jurisdiction on the trial divisions of the General Courts of Justice "[in] all justiciable matters of a civil nature," except for areas in which jurisdiction specifically lies elsewhere. *See Harris v. Pembaur*, 84 N.C. App. 666, 668, 353 S.E. 2d 673, 675 (1987). Defendant contends that North Carolina lacks subject matter jurisdiction because the Kings Port Partnership is a South Carolina business entity. For

reasons we shall elaborate upon, *infra*, we conclude that the judge found that plaintiffs and defendant formed a North Carolina partnership. Evidence in the record supports this finding. Plaintiffs' allegations of fraud, their demand for an accounting from defendant, and their prayer that the court dissolve the partnership are clearly justiciable in our courts. *See* N.C. Gen. Stat. Secs. 59-51, 59-52, and 59-62 (1982 & Supp. 1988).

Defendant contends that plaintiffs have made a demand for one-fourth of the guaranty amount but have not alleged that a default on the loan repayment has occurred. Defendant thus argues that plaintiffs, in making their demand, have failed to state a claim against him. The alleged failure of a complaint to state a cause of action for which relief can be granted, however, does not equate with a lack of jurisdiction over the subject matter of the complaint. *Dale v. Lattimore*, 12 N.C. App. 348, 352, 183 S.E. 2d 417, 419-20 (1971), *cert. denied*, 279 N.C. 619, 184 S.E. 2d 113 (1971).

We hold that North Carolina has subject matter jurisdiction to adjudicate each of plaintiffs' claims against defendant, and we overrule this assignment of error.

## II

Defendant next argues that the trial judge erred by denying defendant's motion to dismiss the Complaint for lack of personal jurisdiction. It is well established that determining whether a forum has jurisdiction over a defendant necessitates a two-step analysis. *See Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 675, 231 S.E. 2d 629, 630 (1977). First, we determine whether statutory authority confers jurisdiction upon our courts. *Id.* The second, and critical, inquiry is this: Will the exercise of jurisdiction violate constitutional guarantees of due process? *Brickman v. Codella*, 83 N.C. App. 377, 380, 350 S.E. 2d 164, 166 (1986).

Plaintiffs bear the burden of showing, by a preponderance of the evidence, that defendant placed himself within the reach of our jurisdictional statutes. *J.M. Thompson Co. v. Doral Mfg. Co., Inc.*, 72 N.C. App. 419, 423, 324 S.E. 2d 909, 912 (1985), *disc. rev. denied*, 313 N.C. 602, 330 S.E. 2d 611 (1985). When the parties do not request that the judge make findings of fact in support of a ruling on a motion to dismiss, we presume that the judge found facts sufficient to support the judgment. *Id.* at 423-24, 324 S.E. 2d at 912. Our task is to determine whether the presumed

CHURCH v. CARTER

[94 N.C. App. 286 (1989)]

findings of fact are supported by competent evidence in the record; if they are, the findings are conclusive on appeal, notwithstanding other evidence in the record to the contrary. *See id.* at 424, 324 S.E. 2d at 912-13.

We turn now to the question whether statutory authority allows our courts to exercise jurisdiction over this defendant.

A

[2] N.C. Gen. Stat. Sec. 1-75.4 (1983), the North Carolina "long-arm" statute, lists twelve "circumstances" under which a court, having subject matter jurisdiction, will also acquire personal jurisdiction. Our statute is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause. *E.g., Pope v. Pope*, 38 N.C. App. 328, 330, 248 S.E. 2d 260, 261 (1978). We thus give a broad and liberal construction to the provisions of the statute, within the perimeters established by federal due process. *See First Nat'l Bank v. Gen. Funding Corp.*, 30 N.C. App. 172, 176, 226 S.E. 2d 527, 530 (1976).

Plaintiffs contend that statutory jurisdiction lies under several of the provisions listed in Section 1-75.4. As any one of the enumerated circumstances is adequate to meet the statutory requirement, we need not examine and discuss each of the circumstances plaintiffs allege exist in this case. From the evidence in the record, we are satisfied that the judge correctly found that statutory jurisdiction lies.

In their Complaint and affidavits, plaintiffs allege they advanced $67,500 to defendant, at his direction, to be used by him to acquire options on certain real property in South Carolina and to obtain a mobile home for use in the partnership business. Plaintiffs maintain that these monies were sent to defendant from Wilkes County. Consequently, they argue, Section 1-75.4(5)(d) applies. Subsection 5(d) confers jurisdiction when "things of value [are] shipped from this State by the plaintiff to the defendant on his order or direction." We agree with plaintiffs that subsection 5(d) is applicable.

In *Pope*, we held that "[m]oney payments are clearly a thing of value" under subsection (5)(c) of the long-arm statute. In *Schofield v. Schofield*, we said such payments also constituted "things of value" under subsection (5)(d). 78 N.C. App. 657, 660, 338 S.E. 2d 132, 134 (1986). Both *Pope* and *Schofield* were domestic cases involving spousal-support payments. Their holdings, however, apply

here. We hold that plaintiffs shipped "things of value" to defendant at his direction, and that statutory jurisdiction is thus established under Section 1-75.4(5)(d).

Having satisfied the first test of our two-part inquiry, we turn to the question whether the court's exercise of jurisdiction in this case comports with the due process safeguards to which defendant is entitled.

B

[3] Constitutional due process requires that a defendant have sufficient "minimum contacts" with the forum state so that that state's exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 102 (1945) (citations omitted); *see Miller v. Kite*, 313 N.C. 474, 477, 329 S.E. 2d 663, 665 (1985). The existence of such contacts is determined by a careful consideration of the facts of each case in order to ascertain what is just under the circumstances. *Brickman*, 83 N.C. App. at 380, 350 S.E. 2d at 166. Factors we consider are these: 1) the quantity of the contacts; 2) the nature and quality of the contacts; 3) the source and connection of the cause of action to the contacts; 4) the interest of the forum state; and 5) convenience to the parties. *Marion v. Long*, 72 N.C. App. 585, 587, 325 S.E. 2d 300, 302, *disc. rev. denied and appeal dismissed*, 313 N.C. 604, 330 S.E. 2d 612 (1985). The location of critical witnesses and material evidence, and the existence of a contract having a substantial connection with the forum state are also probative concerns. *Georgia R.R. Bank & Trust Co. v. Eways*, 46 N.C. App. 466, 469, 265 S.E. 2d 637, 640 (1980). In each case, it is essential that there be some act by which the defendant purposefully adopts "the privilege of conducting activities within the forum State, thus invoking the protections and benefits of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed. 2d 1283, 1298, *reh'g denied*, 358 U.S. 858, 3 L.Ed. 2d 92 (1958) (citation omitted); *see Chadbourn, Inc. v. Katz*, 285 N.C. 700, 705, 208 S.E. 2d 676, 679 (1974).

Plaintiffs argue that minimum contacts exist in this case for the following reasons: 1) defendant came to Forsyth County, North Carolina, to initiate discussions with plaintiff Foster concerning the Myrtle Beach business venture; 2) a subsequent meeting between plaintiffs and defendant was held in North Wilkesboro, North Carolina, at which meeting plaintiffs and defendant agreed to form

the Kings Port Partnership; 3) plaintiffs forwarded monies from North Carolina to defendant for partnership use; and 4) defendant executed a guaranty agreement, on behalf of the partnership, with Southern National Bank of North Carolina, for a $60,000 loan to be used for partnership affairs. Plaintiffs allege that three meetings related to the formation of the partnership occurred in North Carolina. Defendant claims that only two such meetings took place and that final decisions concerning the formation of the partnership were made in South Carolina. We presume that the trial judge found as fact that defendant solicited plaintiffs in North Carolina and that the decision to form the enterprise was made in this State. *See J.M. Thompson Co.*, 72 N.C. App. at 423-24, 324 S.E. 2d at 912; *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E. 2d 111, 114 (1986). We find support for these findings in the pleadings and affidavits of plaintiffs. These contacts, in our view, are more than adequate for jurisdictional purposes.

In *Brickman*, we noted the significance of the nonresident defendant's "[seeking] out" the plaintiffs and "initiat[ing] the contacts with North Carolina from which the claim[s] ar[ose]." 83 N.C. App. at 383, 350 S.E. 2d at 168 (emphasis omitted). We quoted, in that case, the well-known requirement of *World-Wide Volkswagen Corp. v. Woodson* that a defendant's contacts with the forum state must be such that he or she "should reasonably anticipate being haled into court there." 444 U.S. 286, 297, 62 L.Ed. 2d 490, 501 (1980) (citations omitted). We held, in *Brickman*, that the defendant's contacts with this State were not "random, casual, or fortuitous," but were, rather, " 'purposefully directed' " at the plaintiff "in order to obtain his financial assistance with a new business venture whereby [defendant] sought personal commercial benefit." 83 N.C. App. at 384, 350 S.E. 2d at 168. We are presented with an identical situation here. Thus, although defendant's contacts with this State may have been few in number, the nature and quality of them—his soliciting of partners here, the formation of the partnership here, defendant's receipt of monies sent to him from North Wilkesboro, and the partnership's taking out a loan for which defendant signed a guaranty agreement with a North Carolina bank (*cf. United Buying Group v. Coleman*, 296 N.C. 510, 517, 251 S.E. 2d 610, 615 (1979), in which guarantor received no "attending commercial benefits" for promise and, therefore, execution of guaranty agreement was insufficient for minimum contacts)—are such that due process is not offended by this State's exercising jurisdiction over him.

The partnership agreement in this case is substantially connected to North Carolina. *See Georgia R.R. Bank and Trust Co.*, 46 N.C. App. at 469, 265 S.E. 2d at 640. Moreover, North Carolina has a decided interest in "protecting its residents in the making of contracts with nonresidents who solicit business within its borders," especially when those dealings give rise to allegations that North Carolina citizens have been defrauded. *See Brickman*, 83 N.C. App. at 384, 350 S.E. 2d at 168. Finally, there is nothing in the record to suggest that litigating these claims in North Carolina will place an untoward inconvenience on defendant; *e.g.*, nothing in the record indicates that the location of critical witnesses and material evidence necessitates litigating this action in South Carolina. *See Georgia R.R. Bank and Trust Co.*, 46 N.C. App. at 469, 265 S.E. 2d at 640.

## III

We hold that the trial judge correctly denied defendant's motion to dismiss this action for lack of subject matter and personal jurisdiction, and the order of the court is, therefore,

Affirmed.

Judges JOHNSON and ORR concur.